UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

STACY MAKHNEVICH,

                               **MEMORANDUM & ORDER**

                Plaintiff,         18-CV-285 (KAM) (VMS)

      - against -


GREGORY BOUGOPOULOS; NOVICK, EDELSTEIN,
LUBELL, REISMAN, WASSERMAN & LEVENTHAL,
P.C.,

                Defendants.

---------------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

       Plaintiff Stacy Makhnevich, proceeding *pro se*, brings

this action against Defendants Gregory Bougopoulos and Novick,

Edelstein, Lubell, Reisman, Wasserman & Leventhal, P.C. (the

"Novick Firm")[1], asserting violations of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and section 349

of New York's General Business Law ("GBL").  Plaintiff claims that

Defendants engaged in a host of unfair debt collection practices

during the course of state court litigation to recover condominium

charges and other fees assessed against Plaintiff.

       Defendants now move for summary judgment on Plaintiff's

claims pursuant to Federal Rule of Civil Procedure 56.  Defendants

---

[1] The Novick Firm has since changed its name to Novick Edelstein Pomerantz P.C.
(ECF No. 85.)

have complied with Local Civil Rules 56.1 and 56.2. For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

The court draws the following facts, which are not in genuine dispute, from the parties' 56.1 statements, declarations, and exhibits. The court begins with Defendants' debt collection letters before proceeding to overview what one state court judge described as the "tortured history" of the litigation between the parties. (ECF No. 175-35 at 3.)[2]

## I. Pre-Litigation Communications

Plaintiff is the owner of a condominium located at 2900 Ocean Avenue in Brooklyn, New York. (ECF No. 175-41 ("Defs.' 56.1") ¶ 1; ECF No. 176-22 ("Pl.'s 56.1") ¶ 1.) In 2015, the condominium's Board of Managers (the "Board") retained the Novick Firm to recover unpaid common charges and other fees from Plaintiff. (Defs.' 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.) Defendant Gregory Bougopoulos is a member of the Novick Firm. (ECF No. 175-1 ("Bougopoulos Decl.") ¶ 1.)

On April 3, 2015, the Novick Firm sent a letter to Plaintiff notifying her that it had been retained to collect $5,410.85 in unpaid common charges. (ECF No. 175-22.) Among other

_____

[2] All pin citations to the record refer to the page number assigned by the court's CM/ECF system.

notifications and disclaimers, the April 3, 2015 letter advised Plaintiff that the Novick Firm had not reviewed the particular circumstances of Plaintiff's account. (*Id.* at 3.) The April 3, 2015 letter also informed Plaintiff that she had thirty days to dispute the debt in writing. (*Id.*) On May 11, 2015, the Novick Firm sent a copy of the April 3, 2015 letter to JPMorgan Chase Bank, N.A., which owned a mortgage on Plaintiff's condominium. (ECF No. 175-23.)

On June 5, 2015, the Novick Firm filed a notice of lien for unpaid common charges on behalf of the Board with the Kings County Clerk's Office. (ECF No. 175-24 at 4-6.) The Novick Firm subsequently recorded the lien with the New York City Department of Finance on June 19, 2015. (*Id.* at 2-3.)

On November 20, 2015, the Novick Firm sent a second letter to Plaintiff informing her that the unpaid debts owed to the Board had grown to $7,283.16. (ECF No. 175-26 at 3.) Like the first letter, the November 20, 2015 letter notified Plaintiff that the Novick Firm had not reviewed the circumstances of her particular case and that she had thirty days to dispute the debt in writing. (*Id.*)

## II.  **The Board's Civil Court Action**

On November 25, 2015, the Novick Firm filed a complaint on behalf of the Board against Ms. Makhnevich in the New York City Civil Court for Kings County. (ECF No. 175-27.) The complaint

sought $7,283.16 in unpaid common charges, assessments, and late fees, as well as attorney's fees in excess of $2,500.00. (*Id.* at 4.) On December 11, 2015, the summons and complaint were served on Ms. Makhnevich by Devin Harrington, a licensed process server. (*Id.* at 2.) Mr. Harrington effectuated service in accordance with N.Y. C.P.L.R. § 308(2) by delivering the summons and complaint to a person of suitable age and discretion at Ms. Makhnevich's Brooklyn condominium. (*Id.*) Mr. Harrington also mailed a copy of the summons and complaint to Ms. Makhnevich's Brooklyn address on December 14, 2015. (*Id.*)

On March 11, 2016, the Civil Court granted the Board's motion for a default judgment on liability due to Ms. Makhnevich's failure to appear, answer, or otherwise defend in the Civil Court action. (ECF No. 175-29.) On March 24, 2016, the Board served Plaintiff with a notice of an inquest on damages as directed by the Civil Court. (ECF No. 175-30.)

On May 3, 2016, Defendant Bougopoulos received a voicemail from an attorney named Joe Schuessler, who stated that he represented two defendants in lawsuits commenced by the Novick Firm. (ECF No. 175-31 at 4.) In an email the following day, Mr. Schuessler confirmed that Ms. Makhnevich was one of his clients. (*Id.*) Based on Mr. Schuessler's representation, Mr. Bougopoulos sent the account ledger listing Ms. Makhnevich's debts to Mr. Schuessler for the purpose of settlement negotiations. (*Id.* at

3.)  During a subsequent telephone conversation, in which Mr. Schuessler again stated that he was Ms. Makhnevich's attorney, Mr. Bougopoulos advised Mr. Schuessler that Ms. Makhnevich had defaulted in the Civil Court action.  (Bougopoulos Decl. ¶¶ 34-35.)  Although Mr. Bougopoulos and Mr. Schuessler also discussed settling the case, the amount that Mr. Schuessler advised that Ms. Makhnevich was willing to pay was far below what the Board was willing to settle for.  (*Id.* ¶ 34.)

The Civil Court scheduled an inquest on damages to commence on April 19, 2017.  (ECF No. 175-28 at 3.)  On that date, Ms. Makhnevich's daughter – Allison Goldman – appeared in court and obtained an adjournment on behalf of Ms. Makhnevich.  (*Id.* at 2; Bougopoulos Decl. ¶ 36.)  On June 21, 2017, the Civil Court denied Ms. Makhnevich's motion to dismiss for lack of standing, because the motion was submitted through a power of attorney for Ms. Makhnevich but the documentation for the power of attorney was not submitted with the motion.  (*See* ECF No. 175-35 at 3-4.)  On August 16, 2017, Ms. Makhnevich granted her daughter Allison a durable power of attorney under New Jersey law.  (ECF No. 175-33.)

On September 26, 2017, Allison Goldman appeared in Civil Court on Ms. Makhnevich's behalf with Diana Goldman, another one of Ms. Makhnevich's daughters.  (Bougopoulos Decl. ¶ 37.)  On that date, the Civil Court granted Ms. Makhnevich's motion to vacate the default judgment on the consent of the Board.  (ECF No. 181 at

4-5.)[3]   The Civil Court accepted Allison Goldman's power of attorney for Ms. Makhnevich, permitted Ms. Makhnevich to file an answer, and ordered that "[a]ny jurisdictional defenses are hereby waived." (*Id.*)   Rather than answering the Civil Court complaint, however, Ms. Makhnevich filed two motions to stay or dismiss the Civil Court action based on the filing of the instant federal action on January 16, 2018.   (*See* ECF No. 175-35 at 4.)   Ms. Makhnevich's motions were denied on January 17, 2018 and January 30, 2018, respectively. (*Id.*) On February 9, 2018, Ms. Makhnevich filed a motion to dismiss the Civil Court action based again on the filing of the instant federal action.   (*Id.; see also* ECF No. 175-34 at 3.)

On February 13, 2018, Mr. Bougopoulos sent a letter on behalf of the Board to Ms. Makhnevich, in the care of her daughters Allison and Diana Goldman.   (ECF No. 175-34.)   The February 13, 2018 letter informed Ms. Makhnevich that the Novick Firm had not received an amended answer from her by the Civil Court's January 31, 2018 deadline.   (*Id.* at 3.)   As a courtesy, the Novick Firm extended the time to serve an answer until February 25, 2018. (*Id.*)   The letter also advised Ms. Makhnevich that her motions to

---

[3] By letter dated August 15, 2021, Plaintiff moved for leave to re-file a more legible copy of the Civil Court's September 26, 2017 order.   (ECF No. 181.) Defendants do not object.   (ECF No. 182.)   The court accordingly GRANTS Plaintiff's [181] motion and considers the more legible copy of the September 26, 2017 order.

stay or dismiss the Civil Court action had been denied, and that the Novick Firm considered her February 9, 2018 motion to dismiss to be a "frivolous . . . dilatory tactic." (*Id.*) The letter stated that if Ms. Makhnevich did not agree to withdraw her motion to dismiss and abstain from filing any further motions based on the instant federal action, the Novick Firm would move the court to impose sanctions and/or award legal fees. (*Id.*)

On March 19, 2018, Mr. Bougopoulos sent another letter to Ms. Makhnevich, in the care of her two daughters. (*Id.* at 13-14.) The letter advised Ms. Makhnevich that the Novick Firm had not been served with her answer, but that it obtained a copy from the court's file around March 16, 2018. (*Id.* at 13.) The letter also informed Ms. Makhnevich that the Novick Firm was treating the answer "as a nullity" because it was not verified in accordance with C.P.L.R. § 3020(a). (*Id.* at 14.)

On April 18, 2018, the Civil Court issued an order denying Ms. Makhnevich's motion to dismiss, declining to strike Ms. Makhnevich's answer, and granting the Board's motion for summary judgment as to liability. (ECF No. 175-35 at 3.) With respect to liability, the Civil Court concluded that Ms. Makhnevich failed to demonstrate a genuine issue for trial because her opposition consisted of an unsworn declaration that was not affirmed under penalty of perjury. (*Id.* at 5-6.) The Civil Court also observed that it was unclear whether the declaration was made

by Ms. Makhnevich or her daughter Allison. (*Id.* at 6.) Having concluded that there was no genuine issue as to liability, the Civil Court scheduled a trial on damages. (*Id.*)

The damages trial occurred between December 4 and December 6, 2018. (ECF No. 175-28 at 2; ECF No. 175-37 at 2.) After deliberations, a jury found that the Board was entitled to $12,322.80 in common charges and $3,941.82 in other assessments from Ms. Makhnevich, for a total of $16,264.62. (ECF No. 175-36 at 3.) Because Ms. Makhnevich's condominium agreement entitled prevailing parties to recover attorney's fees, the Civil Court also held a hearing regarding attorney's fees. (ECF No. 175-37 at 2-4.) The Civil Court ultimately awarded the Novick Firm $21,047.73 in attorney's fees. (*Id.* at 11.) On August 29, 2019, the Civil Court entered judgment against Ms. Makhnevich in the amount of $40,936.60, representing the sum of the jury's verdict, the award of attorney's fees, interest, and certain court costs. (ECF No. 175-38 at 2.)

## III. This Action

Plaintiff commenced the instant action by filing a complaint on January 16, 2018 against the Novick Firm, Mr. Bougopoulos, and the Board. (ECF No. 1.) On October 31, 2018, Plaintiff moved for leave to file an amended complaint, adding Bryant Tovar as a defendant. (ECF No. 52.) On November 19, 2018, the court granted Plaintiff's motion for leave to file an amended

8

complaint based on Defendants' consent. (11/19/18 Minute Order.)
The court specifically ordered that Plaintiff "may not further
amend the complaint or file additional motions without a court
order granting permission to do so." (*Id.*) On December 9, 2018,
Plaintiff requested a pre-motion conference to move for leave to
file a second amended complaint. (ECF No. 61.) The court held a
pre-motion conference on December 14, 2018 and set a briefing
schedule for Plaintiff's motion for leave to file a second amended
complaint. (12/14/18 Minute Entry.)

The court denied Plaintiff's motion for leave to file a
second amended complaint in a July 9, 2019 memorandum and order.
(ECF No. 86.) The court found that it would be futile for Plaintiff
to add allegations regarding the Board's assessment of attorney's
fees for a Civil Court hearing because such fees were authorized
by Plaintiff's condominium agreement. (*Id.* at 10-11.) Because
the Board did not qualify as a "debt collector" under the FDCPA,
the court also dismissed all federal claims against the Board and
declined to exercise supplemental jurisdiction over Plaintiff's
state law claims against the Board. (*Id.* at 8-19.)

Although Plaintiff's claims against the Novick Firm and
Defendant Bougopoulos remained intact, the court cautioned
Plaintiff that she could not prevail "on any claims that would
undermine the state court's determination that the common charges
were legitimate." (*Id.* at 18-19.) Instead, the court noted that

Plaintiff needed to show that the remaining defendants "violated the law by the manner in which they engaged in debt collection or on a basis other than one that disputes the legitimacy of the charges as found by the state court." (*Id.* at 19.) On July 19, 2019, the court denied Plaintiff's motion for reconsideration. (ECF No. 89.)

Thereafter, the parties proceeded to engage in contentious discovery under the able supervision of Magistrate Judge Scanlon. On March 12, 2020, the Novick Firm and Mr. Bougopoulos requested a pre-motion conference in order to file a motion for summary judgment. (ECF No. 115.) Plaintiff filed a response in opposition (ECF No. 118), and the court held a pre-motion conference on July 14, 2020. (7/14/20 Minute Entry.) On February 1, 2021, Plaintiff voluntarily dismissed her claims against Bryant Tovar with prejudice, leaving the Novick Firm and Mr. Bougopoulos as the only remaining defendants. (ECF No. 151.) Defendants' motion for summary judgment is now fully briefed and ripe for decision.

## IV. Plaintiff's State Court Action

Following this court's dismissal of her claims against the Board, Ms. Makhnevich commenced an action against the Board and its managing agent in the Supreme Court of New York for New York County. Although not relevant to the disposition of the claims in this action, the court notes that the Supreme Court

dismissed Plaintiff's claims on July 21, 2021. (ECF No. 178 at 2-7.)[4]  The Supreme Court concluded that it lacked personal jurisdiction over the Board because, as further discussed below, Ms. Makhnevich failed to effectuate service on the Board's president or treasurer. (*Id.* at 3-5.) The Supreme Court dismissed Plaintiff's claims against the Board's managing agent, Randy Sulzer, on the merits. (*Id.* at 5-6.) Plaintiff has filed a notice of appeal.

## V. **Plaintiff's New Federal Action**

As part of her opposition to Defendants' motion for summary judgment, Plaintiff moved for leave to file a "supplemental" complaint. (ECF No. 176-1 ("Pl.'s Opp'n") at 34-36.) Plaintiff did so despite the court's order that she "may not further amend the complaint or file additional motions without a court order granting permission to do so." (11/19/18 Minute Order.) Plaintiff's motion seeks to add claims of disability discrimination based on pregnancy due to Defendants' alleged failure to consent to a request for an adjournment in the Civil Court action. (*See* Pl.'s Opp'n at 35-36.) Based on her unsuccessful request for an adjournment in Civil Court and related allegations, Plaintiff has also filed complaints of disability

---

[4] By letter dated July 22, 2021, Defendants moved to add the Supreme Court's order of dismissal to the record in this case. (ECF No. 178 at 1.) The court GRANTS Defendants' [178] motion, over Plaintiff's objection (ECF No. 180), for the sole purpose of providing background on the disputes between the parties.

discrimination against a Civil Court judge and the Civil Court itself with the New York State Division of Human Rights and the United States Department of Justice. (*See* ECF No. 176-14 at 4-5.)

Plaintiff sought to "supplement" her complaint as an alternative to filing a new action against Defendants. (Pl.'s Opp'n at 35.) And on August 17, 2021, Plaintiff filed a new action against Defendants in the U.S. District Court for the Southern District of New York, which subsequently transferred the case to this court.[5] *See Makhnevich v. Novick Edelstein Pomerantz PC*, No. 21-cv-5516 (E.D.N.Y.) (the "New Action"). In addition to largely duplicating her claims in the instant action, the operative complaint in the new action alleges that Defendants discriminated against Plaintiff in the Civil Court action based on her pregnancy. (*Id.*, ECF No. 12.) As a result, Plaintiff's motion to "supplement" her complaint in this action is denied as moot. As discussed at the pre-motion conference held on February 28, 2022, the court will decide the instant motion based on the operative amended complaint in this action and will adjudicate Plaintiff's

---

[5] By letter dated September 9, 2021, Defendants moved to add Plaintiff's initial complaint in her new federal action to the record in this case. (ECF No. 183.) Although the court GRANTS Defendants' [183] motion, it will adjudicate Plaintiff's new claims in her new federal action, but not in the context of deciding the instant motion.

allegations of disability discrimination in the new action at a subsequent date.[6]

**LEGAL STANDARD**

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104. In deciding a summary judgment

---

[6] Finally, the court notes that Ms. Makhnevich commenced an FDCPA action in the Southern District of New York against unrelated defendants based on conduct occurring during state court proceedings to foreclose on her condominium. *Makhnevich v. MTGLQ Invs., L.P.*, No. 19-cv-72 (S.D.N.Y. filed Jan. 3, 2019). That action remains pending.

motion, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

As a *pro se* litigant, the Court is obliged to liberally construe Plaintiff's submissions and read them "to raise the strongest arguments they suggest." *Campbell v. We Transport, Inc.*, 847 F. App'x 88, 88-89 (2d Cir. 2021) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)). Nevertheless, Plaintiff's *pro se* status "d[oes] not eliminate [her] obligation to support [her] claims with some evidence to survive summary judgment." *Nguedi v. Fed. Reserve Bank of N.Y.*, 813 F. App'x 616, 618 (2d Cir. 2020). Plaintiff's "reliance on 'conclusory allegations' and 'unsubstantiated speculation'" will not suffice. *Id.* (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

**DISCUSSION**

**I.  FDCPA Claims**

"Congress enacted the FDCPA to protect against abusive debt collection practices likely to disrupt a debtor's life." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018) (quotations and citation omitted).  "[W]hether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (citation omitted).  "The hypothetical least sophisticated consumer does not have the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quotations and citation omitted).

A. <u>Threshold Issues</u>

"A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Felberbaum v. Mandarich Law Grp.*, 2022 WL 256507, at *4 (E.D.N.Y. Jan. 27, 2022)

(citation omitted).[7]  FDCPA actions must be commenced within one year of the allegedly violative act or omission.  15 U.S.C. § 1692k(d).

With respect to the first requirement, "the FDCPA is triggered when the obligation is a debt arising out of a consumer transaction."  *Finnegan v. J.P. Morgan Chase*, 2022 WL 623357, at *2 (S.D.N.Y. Mar. 3, 2022) (quoting *Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F. Supp. 2d 547, 551 (S.D.N.Y. 2013)); *see* 15 U.S.C. § 1692a(5).  The court concludes that Defendants have forfeited any argument that this requirement is not satisfied.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]."  *Roberts v. Capital One, N.A.*, 719 F. App'x 33, 37 (2d Cir. 2017) (quoting

---

[7] The court has considered whether Plaintiff has come forward with sufficient evidence of Article III standing in light of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).  *See also Faehner v. Webcollex, LLC*, 2022 WL 500454, at *1 (2d Cir. Feb. 18, 2022) (vacating and remanding FDCPA case for the plaintiff and district court to address *TransUnion* in the first instance).  Here, Plaintiff declares that she has experienced severe headaches and stomach aches, among other things, due to Defendants' alleged misconduct.  *See TransUnion*, 141 S. Ct. at 2200 ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *see also, e.g., Benjamin v. Rosenberg & Assocs.*, 2021 WL 3784320, at *5-8 (D.D.C. Aug. 26, 2021) (finding FDCPA claims adequately pleaded based on allegations of headaches and stomach aches, among other things).  Moreover, because the vast majority of Plaintiff's claims concern Defendants' alleged misconduct during the Civil Court action, Plaintiff's claims share "a close relationship [with] harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 141 S. Ct. at 2204; *see also, e.g., Benjamin*, 2021 WL 3784320, at *6 (finding a close relationship with "common-law unjustifiable-litigation torts" (citation omitted)); *Viernes v. DNF Assocs.*, --- F. Supp. 3d ----, 2022 WL 252467, at *6 (D. Hawaii Jan. 27, 2022) (same, for the tort of "wrongful use of civil proceedings").  The court finds that Plaintiff has standing and accordingly proceeds to the merits.

*Niagara Mohawk Power Corp. v. Hudson River-Black Regulating Dist.*,
673 F.3d 84, 107 (2d Cir. 2012)). This rule has "particular force
where a[] [party] makes an argument only in a footnote." *Id.*
(quoting *Niagara Mohawk Power Corp.*, 673 F.3d at 107). In a
footnote of their brief, Defendants merely "note[]" that one New
York court has held that condominium debts do not qualify as
consumer debts under the FDCPA, and state that "even if we presume
common charges and assessments qualify as a 'consumer debt,'
Plaintiff is unable to demonstrate [Defendants] violated FDCPA
requirements." (ECF No. 175-42 ("Defs.' Mem.") at 6 n.4.) The
first requirement is thus satisfied by virtue of Defendants'
forfeiture.[8]

With respect to the second requirement, "[t]he Supreme
Court has made it clear that the FDCPA applies to attorneys
'regularly' engaging in debt collection activity, including such
activity in the nature of litigation." *Goldstein v. Hutton,
Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d
Cir. 2004) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)).
Defendants do not dispute that they regularly engage in debt

---

[8] Even if Defendants had not forfeited this argument, the court would follow
the overwhelming weight of recent authority holding that condominium charges
and assessments are consumer debts subject to the FDCPA. *See, e.g.*, *Agrelo v.
Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 951 (11th Cir. 2016); *Haddad v.
Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir.
2012); *Ladick v. Van Gemert*, 146 F.3d 1205, 1206 (10th Cir. 1998); *Newman v.
Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997).

collection activities.  (Defs.' Mem. at 6 n.4.)  Accordingly, the court will proceed to analyze whether Defendants engaged in any acts or omissions in violation of the FDCPA's requirements, taking Plaintiff's claims in chronological order.

At the outset, however, the court notes that the vast majority of Plaintiff's claims concern Defendants' conduct during the Civil Court action.  "[T]he protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers.'"  *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 96 n.1 (2d Cir. 2012) (quoting *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010)).  In other words, "the state court's authority to discipline will usually be sufficient to protect putative-debtors like [Plaintiff] from legitimately abusive or harassing litigation conduct."  *Id.*  To be sure, the Second Circuit has recognized that civil litigation in state court offers fewer protections than litigation in bankruptcy court.  *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 137 (2d Cir. 2017).  Nevertheless, "courts in this Circuit have been reluctant to impose liability under the FDCPA for statements made . . . during the course of debt collection litigation."  *Gutman v. Malen & Assocs., P.C.*, 512 F. Supp. 3d 428, 431 (E.D.N.Y. 2021) (quoting *Lautman v. 2800 Coyle St. Owners Corp.*, 2014 WL 4843947, at *12 (E.D.N.Y. Sept. 26, 2014)).

18

B. <u>The April 3, 2015 Letter</u>

Plaintiff first claims a violation of 15 U.S.C. § 1692g. (Am. Compl. ¶ 27.)  The FDCPA generally requires a debt collector to send a written notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt."  15 U.S.C. § 1692g(a).  The notice must contain:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* § 1692g(a)(1)-(5).  However, the debt collector is not required to include in the notice any information that was provided in its initial communication with the debtor.  *Id.* § 1692g(a).

As an initial matter, Plaintiff's Section 1692g(a) claim is untimely.  (*See* Defs.' Mem. at 6.)  An FDCPA claim must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  An FDCPA violation occurs "when an individual is injured by the alleged unlawful conduct." *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 83 (2d Cir.

2019).  Here, Plaintiff was allegedly injured in April 2015, when Defendants allegedly failed to provide the notice required by Section 1692g(a) in its letter.  Because Plaintiff filed this action on January 16, 2018, her Section 1692g(a) claim is more than a year-and-a-half too late.

Throughout her papers, Plaintiff asserts that she is entitled to equitable tolling.  "The Second Circuit has not directly addressed whether FDCPA claims can be equitably tolled, but district courts have applied the equitable tolling doctrine in FDCPA cases." *Scott v. Greenberg*, 2017 WL 1214441, at *7 (E.D.N.Y. Mar. 31, 2017).  Here, however, Plaintiff's claim for equitable tolling is based only on Defendants' alleged failure to properly serve her in the Civil Court action in December 2015.  (Pl.'s Opp'n at 13, 19-20.)  Plaintiffs offers no basis to equitably toll her Section 1692g(a) claim, which accrued prior to the filing of the Civil Court action.  To the extent Plaintiff argues she is entitled to equitable tolling because she claims to have never received the April 3, 2015 letter (*see id.* at 19), the court respectfully disagrees. *See, e.g.*, *Burke v. U.S. Postal Serv.*, 2020 WL 9816003, at *7 (E.D.N.Y. Sept. 28, 2020) ("[N]onreceipt of a properly addressed . . . letter is not, by itself, an 'extraordinary circumstance' that warrants equitable tolling.").

In any event, even if Plaintiff's claim were timely, the court finds that Defendants were not required to send Plaintiff a

separate written notice because all of the information required by Section 1692g(a) was contained in Defendants' initial communication of April 3, 2015. (Defs.' Mem. at 8.) Specifically, Defendants' April 3, 2015 letter stated that: (1) Plaintiff owed $5,410.85; (2) the creditor was 2900 Ocean Condominium; (3) Defendants would assume the debt is valid if Plaintiff failed to dispute the debt in writing within thirty days; (4) Defendants would obtain and provide Plaintiff with verification of the debt if she disputed the debt within thirty days; and (5) Defendants would provide Plaintiff with the name and address of the original creditor, if different than the current creditor, upon Plaintiff's written request within the thirty-day period. (ECF No. 175-22 at 3.)

Plaintiff's only response is to dispute receipt of the April 3, 2015 letter. (ECF No. 176-2 ("Makhnevich Decl.") ¶ 15.) However, "[i]t is 'well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.'" *Trs. of Gen. Building Laborers' Local 66 Pension Fund v. J.M.R. Concrete Corp.*, 2021 WL 6211631, at *8 (E.D.N.Y. Sept. 29, 2021) (quoting *Hagner v. United States*, 285 U.S. 427, 430 (1932)). The "mere denial of receipt does not rebut that presumption." *Isaacson v. N.Y. Organ Donor Network*, 405 F. App'x 552, 553 (2d Cir. 2011) (quoting *Meckel v.*

*Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985)); *accord Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2d Cir. 2010).

Here, Defendants have put forward sufficient evidence to give rise to the presumption of mailing and receipt. Mr. Bougopoulos declares that the Novick Firm caused the April 3, 2015 letter to be sent to Plaintiff at her Brooklyn condominium. (Bougopoulos Decl. ¶ 26.) Defendants corroborate this declaration by including a certificate of mailing and a certified mail receipt showing that the letter was mailed to Plaintiff at her Brooklyn condominium on April 6, 2015. (ECF No. 175-22 at 2.) *See, e.g.*, *Wilmington Savings Fund Soc'y v. White*, 2019 WL 4014842, at *4 (E.D.N.Y. May 28, 2019) ("A [party] may submit proof of mailing issued by the United States Postal Service, such as a certified mailing receipt or a certificate of first-class mailing."); *see also, e.g.*, *Wells Fargo Bank, N.A. v. Watts*, 2019 WL 8325097, at *4 (E.D.N.Y. Dec. 16, 2019) (collecting cases).

Other than her denial of receipt, Plaintiff attempts to rebut the presumption of proper mailing by arguing that "USPS has no record for the tracking number." (Makhnevich Decl. ¶¶ 15-18.) The record in this case includes an undated screenshot from the Postal Service's website – submitted by Plaintiff on January 25, 2019 – that shows the tracking number for the April 3, 2015 letter is "not available." (ECF No. 79-5.) However, the court takes

judicial notice of the Postal Service's "frequently asked questions" page that is referenced on the screenshot submitted by Plaintiff. *See, e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (finding it "clearly proper to take judicial notice" of "documents retrieved from official government websites"); *see also Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021). The Postal Service's website explains that tracking records are currently maintained for a maximum of up to two years. *See* U.S. Postal Serv., "How Long Are Records Kept For Tracking?," *available at* https://faq.usps.com/s/article/USPS-Tracking-The-Basics#How can I use USPS Tracking. Given that Plaintiff's undated screenshot was submitted to this court on January 25, 2019 – nearly four years after the April 3, 2015 letter – the court concludes that the screenshot is insufficient to raise a genuine dispute as to receipt. *See Isaac v. NRA Grp., LLC*, 798 F. App'x 693, 693-94 (2d Cir. 2020) (affirming grant of summary judgment where the plaintiff failed to raise a genuine factual dispute as to receipt of initial communication under the FDCPA). Moreover, construing the record in favor of the non-moving Plaintiff, the court finds that if Plaintiff did not receive the April 2015 letter from Defendants, she could not have been injured as a "least sophisticated consumer," and her Section 1692g(a) claim would be, and is, dismissed.

## C. The Initiation of the Civil Court Action

Plaintiff alleges that Defendants falsely represented that they were authorized to proceed with the Civil Court action by commencing the Civil Court action on November 25, 2015 in the name of the Board rather than in the name of its president or treasurer. (Pl.'s Opp'n at 7, 10-11, 15, 18, 21, 30-31.)[9] The court assumes this claim is timely and construes this claim as being raised under Section 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

The Second Circuit has interpreted Section 1692e to include a materiality requirement. *Cohen*, 897 F.3d at 85. "The FDCPA was designed to give consumers reliable information so that they can make informed decisions about how to address debts, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the

---

[9] The court notes that this claim was not raised in the operative amended complaint. Although Federal Rule of Civil Procedure 15(b) refers to conforming the pleadings to the evidence during and after trial, "some courts have applied Rule 15(b) to conform pleadings to the proof offered at summary judgment." *CIT Bank, N.A. v. Zisman*, 2021 WL 3354047, at *5 (E.D.N.Y. Mar. 1, 2021) (citation omitted); *see also Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993) ("[T]he undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15(b)."). Because Defendants have consented by briefing this issue (*see* ECF No. 177-11 ("Defs.' Reply") at 14 n.10), the court proceeds to consider whether the filing of the Civil Court action in the name of the Board violated the FDCPA. *See CIT Bank, N.A.*, 2021 WL 3354047, at *6 (noting that a party may impliedly consent by failing to object or by briefing the issue).

statement is incorrect)." *Id.* (quotations and citation omitted). Thus, "a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated consumer." *Id.* (citation omitted). Although communications violate the FDCPA when they "could mislead a putative-debtor as to the nature and legal status of the underlying debt," or "could impede a consumer's ability to respond to or dispute collection," "mere technical falsehoods that mislead no one are immaterial and consequently not actionable under § 1692e." *Id.* at 86 (quotations and citation omitted).

Plaintiff appears to be correct that, as an unincorporated association, the Civil Court action should not have been commenced in the name of the Board. N.Y. General Associations Law § 12 ("An action or special proceeding may be maintained[] by the president or treasurer of an unincorporated association . . . ."); *see also, e.g.*, *Westport Condo. Ass'n v. Mayzel*, 2019 WL 274257, at *1 (N.Y. Sup. Ct. App. Term. Jan. 11, 2019) ("Inasmuch as this action was commenced in the name of an association, it should have been brought by its treasurer or president, rather than in the name of the association itself . . . ."). However, this mistake is "not a fatal defect"; it is "merely a correctable error" that can be remedied by amendment. *August Bohl Constr. Co. v. IUE, AFL-CIO Dist. No. 3*, 73 A.D.2d 1023, 1024 (3d Dep't 1980);

*see also, e.g.*, *Int'l Bhd. of Teamsters, Local No. 264 v. Nason's Delivery, Inc.*, 2011 WL 3862322, at *6 (W.D.N.Y. Aug. 31, 2011).

As a result, Defendants' apparent failure to bring the Civil Court action in the name of the Board's president or treasurer did not affect the "nature and legal status of the underlying debt," "impede" the least sophisticated consumer's ability to litigate on the merits, or "undermine[]" a defense in Civil Court. *Cohen*, 897 F.3d at 85-86 (citations omitted). Indeed, given that the Second Circuit in *Cohen* found a similar kind of misidentification immaterial – namely, the misidentification of a mortgage servicer as a creditor on a collection notice, 897 F.3d at 85 – the court finds that Defendants' failure to identify the Board's president or treasurer as the plaintiff in the Civil Court action was immaterial. In short, Defendants' error embraced a "mere technical falsehood[] that misle[d] no one." *Id.* at 86 (citation omitted). If anything, Defendants' error *contributed* to Plaintiff's efforts to defend against an adverse judgment in Civil Court. *See, e.g.*, *2834-2838 Brighton 3rd St. Condo. v. Bazinian*, 2020 WL 629764, at *1 (N.Y. Sup. Ct. App. Term Jan. 31, 2020) (reversing judgment when the error was not corrected).

### D. Alleged Sewer Service

Plaintiff claims that Defendants engaged in "sewer service" in the Civil Court action in December 2015, *i.e.*, that

Defendants failed to serve Plaintiff with the summons and complaint and filed a false affidavit stating that they had done so to obtain a default judgment. (Am. Compl. ¶¶ 19-23; Pl.'s Opp'n at 13, 17-21.) Plaintiff is correct that sewer service can violate several provisions of the FDCPA. *See, e.g.*, *Guzman v. Mel S. Harris & Assocs., LLC*, 2018 WL 1665252, at *9 (S.D.N.Y. Mar. 22, 2018) (collecting cases finding that sewer service can violate Sections 1692d, e, and f). It is also true that "[e]quitable tolling is available where a party does not discover the action exists until after default judgment is entered due to sewer service." *Kearney v. Cavalry Portfolio Servs., LLC*, 2014 WL 3778746, at *5 (E.D.N.Y. July 31, 2014). Thus, Plaintiff could avoid the operation of the FDCPA's one-year statute of limitations based on a valid claim of sewer service. However, the court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether sewer service actually occurred.

"In New York, a process server's sworn statement of service creates a presumption that service has been effectuated in the manner described in the affidavit of service which may be overcome by a sworn denial of receipt of service which *specifically rebuts* the statements in the process server's affidavits." *Sam v. Midland Credit Mgmt., Inc.*, 2021 WL 5772471, at *6 (W.D.N.Y. June 15, 2021) (emphasis added); *see also, e.g.*, *Sanchez v. Abderrahman*, 2013 WL 8170157, at *7 (E.D.N.Y. July 24, 2013) ("[A]n affidavit

of service 'constitutes a prima facie showing of proper service.'"
(quoting *Aurora Loan Servs., LLC v. Gaines*, 962 N.Y.S.2d 316, 318
(2d Dep't 2013))); *Picard v. ABC Legal Servs.*, 2015 WL 3465832, at
*6 (N.D. Cal. June 1, 2015) (applying presumption of service to
FDCPA claim based on alleged sewer service); *Long v. Nationwide
Legal File & Serve, Inc.*, 2013 WL 5219053, at *15 (N.D. Cal. Sept.
17, 2013) (same). Here, Defendants' process server effectuated
service pursuant to C.P.L.R. § 308(2) on December 11, 2015. (ECF
No. 175-27 at 2.)

C.P.L.R. § 308(2) authorizes personal service on an
individual "by delivering the summons within the state to a person
of suitable age and discretion at the . . . dwelling place or usual
place of abode of the person to be served . . . ." Within twenty
days of this delivery, the serving party must also mail the summons
to the last known residence of the party to be served. *Id.*
"[P]roof of service shall identify such person of suitable age and
discretion and state the date, time[,] and place of service . . .
." *Id.* The affidavit of Defendants' process server satisfies
these requirements. Specifically, the affidavit states that on
December 11, 2015 at 12:08 P.M., Defendants' process server
delivered the summons and complaint to a person of suitable age
and discretion at Plaintiff's Brooklyn condominium. (ECF No. 175-
27 at 2.) The affidavit identifies the person of suitable age and
discretion as a Jane Doe, a white female in her thirties who was

between five-foot-four inches and five-foot-eight inches tall, weighed between 131 and 180 pounds, and had black hair. (*Id.*)

Plaintiff has failed to come forward with admissible evidence that "specifically rebuts" the statements in the process server's affidavit. *Sam*, 2021 WL 5772471, at *6. Plaintiff declares that she "does not fit the description specified in the affidavit of service." (Makhnevich Decl. ¶ 12.) But the affidavit of service does not purport to reflect service on Plaintiff personally pursuant to C.P.L.R. 308(1); rather, the affidavit reflects service on a person of suitable age and discretion at Plaintiff's usual place of abode pursuant to C.P.L.R. 308(2). *See, e.g.*, *MRS Prop. Invs., Inc. v. Bivona*, 2021 WL 1738329, at *3 (E.D.N.Y. May 3, 2021) ("New York State . . . does not require actual receipt by a party."). In her declaration, Plaintiff also states that the description listed on the affidavit of service does not match her two daughters, but she does not state that no person of suitable age and discretion was present in her home on the date and at the time of service on the process server's affidavit. (Makhnevich Decl. ¶ 12.) Plaintiff's daughters are far from the only people of suitable age and discretion who could have accepted service at Plaintiff's home. *See, e.g.*, *D.S. ex rel. C.S. v. Rochester City Sch. Dist.*, 2020 WL 7028523, at *7 (W.D.N.Y. Nov. 30, 2020) ("To be of suitable age and discretion, the person must objectively be of sufficient maturity,

understanding[,] and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant." (quotations and citation omitted)); *see also, e.g.*, *MRS Prop. Invs.* 2021 WL 1738329, at *3 (doorman); *Kokolis v. Wallace*, --- N.Y.S.3d ----, 2022 WL 468392, at *2 (2d Dep't Feb. 16, 2022) (relative); *Rattner v. Fessler*, --- N.Y.S.3d ----, 2022 WL 468471, at *2 (2d Dep't Feb. 16, 2022) (spouse); *Nat'l Credit Union Admin. Bd. v. Ahmed*, 155 N.Y.S.3d 306 (Table), 2021 WL 5408151, at *2 (N.Y. Sup. Ct. Nov. 16, 2021) (nephew); *Bank of N.Y. Mellon v. Ziangos*, 149 N.Y.S.3d 145, 147 (2d Dep't 2021) (co-resident). In light of Plaintiff's failure to present evidence that none of the myriad other persons of suitable age and discretion who could have received service on her behalf were present in her home on the date and time listed on the process server's affidavit, Plaintiff has failed to come forward with sufficient evidence to allow a reasonable jury conclude that the affidavit of service was false.

The Second Department's recent decision in *Sperry Associates Federal Credit Union v. Lee* illustrates Plaintiff's failure to rebut the presumption of service established by the process server's affidavit. 148 N.Y.S.3d 169 (2d Dep't 2021). In that case, the plaintiff served a "John Doe" and "Jane Doe" at the defendants' residence pursuant to C.P.L.R. 308(2). *Id.* at 171. In seeking to rebut the presumption of service, the homeowners "merely asserted that [one of the homeowners] was not at home at

the time of the alleged service, and, without substantiation, that [the other homeowner] did not match one aspect of the description, provided in the affidavit of service, of the person served." *Id.* The Appellate Division concluded that the affidavits "lacked sufficient detail to rebut the presumption of proper service," observing that the homeowners "failed to account for the possibility that the 'John Doe' or 'Jane Doe' could have been persons present to accept service as a person of suitable age and discretion in their home at the time of the alleged service." *Id.* So too here: even if Plaintiff had substantiated her claim that the description on the affidavit does not match her daughters – which she has not – her declaration fails to account for the possibility that service was effectuated on another person of suitable age and discretion at Plaintiff's home. Accordingly, because Plaintiff has not adequately rebutted the presumption of service arising from the process server's affidavit, she has failed to demonstrate a genuine issue for trial as to whether Defendants engaged in sewer service in violation of the FDCPA, even if this claim were timely or subject to equitable tolling.[10]

---

[10] Plaintiff also attaches a screenshot from the website of the New York City Department of Consumer Affairs stating that on April 1, 2021, a process server named Devin Harrington failed to comply with an order and was suspended pending compliance. (ECF No. 176-8 at 2.)  The court notes that the license number for the Devin Harrington listed on the screenshot differs from the license number for the Devin Harrington listed on the affidavit of service. (*Compare* ECF No. 175-27 at 2 *with* ECF No. 176-8 at 2.)  But even if both documents refer to the same Devin Harrington, an unspecified suspension for failing to comply with an order imposed on April 1, 2021 – more than five years after the service in this

E. Third Party Communications

The FDCPA generally prohibits a debt collector from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer, [her] attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). However, this prohibition does not apply when a communication is made with "the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy." *Id.* Here, Plaintiff alleges that Defendants violated Section 1692c(b) by communicating with Mr. Schuessler – the man who contacted Mr. Bougopoulos and informed him that he was Ms. Makhnevich's attorney – and her daughters who advised Defendants at the state court that they were appearing for Plaintiff in connection with the Civil Court action. (*See* Am. Compl. ¶¶ 15, 27; Pl.'s Opp'n at 18, 20, 23-24, 26-27.)[11] The court respectfully disagrees.

---

case – is insufficient to raise a genuine issue with respect to Plaintiff's claim of sewer service. Likewise, Plaintiff's references to debt collection suits filed against other residents of her condominium – without any evidence to undermine the propriety of service in those cases – is insufficient to raise a genuine issue as to the validity of the affidavit of service in this case. (*See* ECF No. 176-7.)

[11] In presenting her claims of unauthorized third party communications, Plaintiff invokes 15 U.S.C. § 1692b. (Am. Compl. ¶¶ 15, 27; Pl.'s Opp'n at 24-25.) Section 1692b provides an exception to Section 1692c(b)'s prohibition on certain third party communications when a debt collector communicates with "any person other than the consumer for the purpose of acquiring location information about

First, "the FDCPA's protections are not triggered by communications initiated by someone other than the debt collector." *Williams v. Ocwen Loan Servicing*, 2020 WL 5757640, at *9 (E.D.N.Y. Sept. 27, 2020) (quoting *Boyd v. J.E. Robert Co.*, 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010)); *see also, e.g.*, *Araujo v. PennyMac Loan Servs., LLC*, 2015 WL 5664259, at *3 (E.D.N.Y. Sept. 23, 2015); *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 411 (E.D.N.Y. 2012). Ms. Makhnevich does not dispute that Mr. Schuessler initiated communications with Mr. Bougopoulos and advised him that he represented Ms. Makhnevich in connection with her debts to the Board. (Bougopoulos Decl. ¶ 34; ECF No. 175-31 at 4.) Instead, Ms. Makhnevich's declaration states only that she "never retained, met, spoke with, [or] saw 'Mr. Schuessler.'" (Makhnevich Decl. ¶ 26.) Notably, Ms. Makhnevich does not deny that she communicated with Mr. Schuessler regarding her debts to the Board, such as by e-mail or text message, nor that she authorized Mr. Schuessler to initiate communications with

---

the consumer . . . ." 15 U.S.C. § 1692b. "Noncompliance with § 1692b is thus a violation of § 1692c(b), and not an independent violation of the Act." *Morant v. Miracle Fin., Inc.*, 2012 WL 4174893, at *3 (E.D.N.Y. Sept. 17, 2012) (citation omitted). The court thus construes Plaintiff's claims as being raised under Section 1692c(b). In any event, the only evidence in the record regarding the acquisition of Plaintiff's location information is Mr. Bougopoulos's declaration that during the Civil Court action, Plaintiff's daughter Allison provided him with a temporary address for "a hospital or other medical facility Plaintiff was recovering from a medical procedure at." (Bougopoulos Decl. ¶ 21 n.7.) As discussed below, Allison had a power of attorney for Plaintiff and Mr. Bougopoulos's communications with her – location related or otherwise – did not run afoul of Section 1692c(b).

Mr. Bougopoulos.  Thus, the court finds that Mr. Bougopoulos's communications with Mr. Schuessler – which were initiated by Mr. Schuessler – did not run afoul of the FDCPA.[12]

Second, it is undisputed that Ms. Makhnevich entered into an agreement granting her daughter Allison a durable power of attorney.  (Bougopoulos Decl. ¶ 37; Makhnevich Decl. ¶ 19.)  In its September 26, 2017 order, the Civil Court "accept[ed] the power of attorney submitted by [Ms. Makhnevich's] representative."  (ECF No. 181 at 4.)  "Section 1692c(b) authorizes a debt collector to speak to a debtor's attorney, and it does not distinguish between an attorney at law and an attorney in fact, *i.e.*, one appointed pursuant to a power of attorney."  *Robinson v. I.C. Sys., Inc.*, 2016 WL 6462278, at *2 (E.D.N.Y. Nov. 1, 2016); *see also Martinez v. I.C. Sys.*, 2019 WL 1508988, at *3 (E.D.N.Y. Mar. 31, 2019) ("Importantly, § 1692c(b) does not distinguish between an attorney-at-law and an attorney-in-fact . . . ."); *West v. Abendroth & Russell Law Firm*, 45 F. Supp. 3d 959, 966 (N.D. Iowa

---

[12] The court has also considered Defendants' argument that Mr. Bougopoulos's communications with Mr. Schuessler were permissible under Section 1692c(b) based on Mr. Schuessler's apparent authority to represent Plaintiff.  (Defs.' Mem. at 9.)  As a general matter, the court agrees with Defendants that traditional agency principles can inform the FDCPA's definition of an attorney. *See, e.g.*, *Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1126 (8th Cir. 2020).  However, apparent authority arises when "a third party reasonably believes the actor has authority to act on behalf of the principal *and* that belief is traceable to the principal's manifestations."  Restatement (Third) of Agency § 2.03 (emphasis added).  Because Defendants rely only on Mr. Schuessler's statements to Mr. Bougopoulos, rather than any manifestations by Plaintiff, Defendants have failed to show that the communications were authorized based on Mr. Schuessler's apparent authority.

2014) (holding that a company with a valid power of attorney "effectively stepped into [Plaintiff's] shoes . . . and, therefore, was no longer a third party to the debt communications"). In light of the undisputed power of attorney that was accepted by the Civil Court, and the fact that the FDCPA does not distinguish between attorneys-at-law and attorneys-in-fact, Defendants' communications with Allison did not violate Section 1692c(b).[13]

To the extent that Plaintiff challenges Defendants' communications with Allison prior to the execution of the power of attorney, the court is likewise unpersuaded. On April 19, 2017, Allison appeared in Civil Court and obtained an adjournment on Plaintiff's behalf. (Bougopoulos Decl. ¶ 36.)[14] The Civil Court also ordered the parties to attempt to settle the case. (*Id.* ¶

---

[13] Plaintiff also claims that Defendants fraudulently procured Allison's consent to enter into the September 26, 2017 order. (*See* Pl.'s Opp'n at 7-8.) In addition to the fact that it was not raised in the operative amended complaint, the court rejects this claim as being based on Plaintiff's apparent misunderstanding of the Civil Court's September 26, 2017 order. The Civil Court's order granted relief *sought by Ms. Makhnevich*, *i.e.*, vacating her default and permitting her to file a late answer. (ECF No. 181 at 4.) It was thus *the Board* who consented to the request to vacate the default, not Ms. Makhnevich or her representatives. There is no evidence in the record to suggest that the Novick Firm demanded that Ms. Makhnevich waive jurisdictional defenses in exchange for consent to vacate the default, as opposed to being imposed by the Civil Court in recognition of Ms. Makhnevich appearing by her daughter Allison and being permitted to file a late answer. Even if there was such evidence, it is a far cry from an unfair debt collection practice to request that a debtor waive a defense to personal jurisdiction in exchange for consenting to vacate the debtor's default and permitting the debtor to litigate on the merits.

[14] In her declaration, Plaintiff states that "[u]pon information and belief, Allison did not go to Court on that day." (Makhnevich Decl. ¶ 21.) Unlike Defendant Bougopoulos, however, there is no evidence in the record that Plaintiff appeared in Civil Court on April 19, 2017, and thus Plaintiff lacks personal knowledge of whether Allison appeared.

36.)    Thus,   even   assuming   Allison   could   not   be   considered Plaintiff's "attorney" under the FDCPA prior to the execution of the power of attorney, Defendants had the "express permission of a court of competent jurisdiction" to communicate with Allison. 15 U.S.C. § 1692c(b); *see also* "Adjournments," N.Y.C. Civ. Ct. ("If it is an emergency and you cannot appear yourself to request the adjournment, but wish to send someone on your behalf, you must give that person written authorization to make the request for you."),                   *available*                   *at* https://www.nycourts.gov/courts/nyc/civil/adjournments.shtml.

Third, it is undisputed that Diana Goldman also appeared in Civil Court on Ms. Makhnevich's behalf.  (Bougoupoulos Decl. ¶ 37; *see* Makhnevich Decl. ¶ 27.)  In its September 26, 2017 order, the Civil Court directed the Novick Firm and Mr. Bougoupoulos to "file and serve an amended summons and complaint on [Ms. Makhnevich's]            representative            at: consultingservices2020@email.com," which was an email address provided by Diana Goldman.  (ECF No. 181 at 4; Bougoupoulos Decl. ¶ 37.)  Thus, the Civil Court's September 26, 2017 order indicated that it viewed Diana as Ms. Makhnevich's "representative" (ECF No. 181 at 4), despite the fact that Diana – unlike Allison – did not have a power of attorney.  *See Bible v. Allied Interstate, Inc.*, 2001 WL 1618494, at *3 (D. Minn. May 14, 2001) (granting summary judgment on Section 1692c(b) claim where the plaintiff's husband

"represented himself as the administrator of [the plaintiff's] affairs"). Under New York law, the Civil Court "may permit, upon the request of a party, that a non-attorney representative, who is related by consanguinity or affinity to such party, be allowed to appear on behalf of such party when the court finds that due to the age, mental[,] or physical capacity or other disability of such party that it is in the interests of justice to permit such representation." N.Y.C. Civ. Ct. Act, § 1815. Thus, the Civil Court necessarily granted express permission to Defendants to communicate with Diana by permitting her to appear as Plaintiff's non-attorney representative, even if Diana could not be considered an attorney within the meaning of Section 1692c(b).

The Supreme Court's decision in *Heintz* reinforces the court's conclusion that Defendants' communications with Mr. Schuessler and Plaintiff's daughters did not violate Section 1692c(b). As mentioned above, the *Heintz* Court held that the FDCPA "applies to the litigating activities of lawyers." 514 U.S. at 294. However, the Court acknowledged in dicta that applying the FDCPA to litigation activities could result in "anomalies." *Id.* at 296. For example, the Court considered another subsection of Section 1692c – Section 1692c(c) – which "requires a 'debt collector' not to 'communicate further' with a consumer who 'notifies' the 'debt collector' that he or she 'refuses to pay' or wishes the debt collector to 'cease further communication.'" *Id.*

(quoting 15 U.S.C. § 1692c(c)). In light of this prohibition, the Court questioned whether an attorney could "file a lawsuit against (and thereby communicate with) a nonconsenting consumer or file a motion for summary judgment against that consumer." *Id.*

Ultimately, the Court concluded that "it is not necessary to read § 1692c(c)" in a way that would prohibit the filing of a lawsuit or a motion for summary judgment. *Id.* Instead, the Court read Section 1692c(c) to contain an "additional, implicit[] exception" that authorizes "the actual invocation of the remedy that the collector 'intends to invoke.'" *Id.* at 296-97 (quoting 15 U.S.C. § 1692c(c)(3)). In reaching this determination, the Court observed that "it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Id.* at 296. The Court also noted that its interpretation was "consistent with the statute's apparent objective of preserving creditors' judicial remedies." *Id.*

Following *Heintz*, lower courts have avoided reading Section 1692c in a manner that would prohibit the communications inherent in an ordinary lawsuit. For example, in a recent unpublished decision, the Second Circuit cited *Heintz* in applying Section 1692c(b), the subsection at issue in this case. *Johnson-Gellineau v. Stiene & Associates, P.C.*, 837 F. App'x 8, 11 (2d

Cir. 2020). In *Johnson-Gellineau*, the plaintiff claimed that attorneys violated Section 1692c(b) by "communicating with the Dutchess County clerk in connection with foreclosure proceedings." *Id.* In affirming the dismissal of this claim, the Second Circuit relied on *Heintz*'s statement that "it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Id.* (quoting *Heintz*, 514 U.S. at 296). Similar to *Heintz* and *Johnson-Gellineau*, the court declines to read Section 1692c in a manner that would countenance the absurd results of prohibiting an attorney debt collector from communicating in connection with a pending court proceeding with (1) an attorney who contacts the debt collector and states that he represents the debtor, or (2) relatives of the debtor who have appeared in court and litigated on the debtor's behalf. *See also Jerman v. Carlisle, McNeillie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600 (2010) (stating that the FDCPA "should not be assumed to compel absurd results when applied to debt collecting attorneys").

In sum, the court concludes that Defendants' communications with Mr. Schuessler and Plaintiff's daughters did not violate Section 1692c(b). However, even if some of the communications could be said to violate a literal reading of Section 1692c(b), the court would construe the statute to avoid the absurd results of prohibiting the communications at issue in

this case.  Defendants are thus entitled to summary judgment on Plaintiff's Section 1692c(b) claims.

F. <u>The February 13, 2018 Letter</u>

Plaintiff raises two distinct claims regarding Defendants' February 13, 2018 letter.  First, Plaintiff asserts that the letter violated the FDCPA by "fail[ing] to disclose . . . that the communication is from a debt collector."  15 U.S.C. § 1692e(11).  In its motion, Defendants contend that the February 13, 2018 letter was not made "in connection with the collection of a debt" under Section 1692e.  (Defs.' Mem. at 12.)  The Second Circuit rejected a similar argument in *Cohen*, however, holding that "a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA."  897 F.3d at 82.  *Cohen* reasoned that "*every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt . . . ."  *Id.* at 83 (citation omitted).  That reasoning applies here because the very purpose of the Civil Court action was to obtain payment on Plaintiff's underlying debts.  Thus, just as *Cohen* held that Section 1692e applied to a foreclosure action and foreclosure filings – including a complaint, summons, certificate of merit,

and request for judicial intervention – Section 1692e applies to the February 13, 2018 letter. *Id.*[15]

Nevertheless, the court finds that the February 13, 2018 letter did not violate Section 1692e(11) based on Defendants' failure to specifically invoke the statutory language that the Novick Firm was a "debt collector." As an initial matter, to the extent Defendants were responding to Plaintiff's motion to dismiss in the Civil Court action, the February 13, 2018 letter was responding to a communication initiated by the consumer. *See, e.g.*, *Williams*, 2020 WL 5757640, at *9 ("[T]he FDCPA's protections are not triggered by communications initiated by someone other than the debt collector." (citation omitted)). In addition, "there simply is no requirement that the letter quote verbatim the language of the statute." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 668 (S.D.N.Y. 2006) (quoting *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 808 (2d Cir. 1989)). In *Bank v. Cooper*,

---

[15] It is true that the February 13, 2018 letter lacks many of the characteristics identified by the Second Circuit in *Hart v. FCI Lender Services, Inc.*, as relevant to determining whether a communication was made in connection with an attempt to collect a debt. 797 F.3d 219, 226 (2d Cir. 2015); *see Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) ("In *Hart*, [the Second Circuit] determined that the letter in question was unambiguously sent in connection with the collection of a debt because: (1) the letter directed the recipient to mail payments to a specified address, (2) the letter referred to the FDCPA by name, (3) the letter informed the recipient that he had to dispute the debt's validity within thirty days, and (4) most importantly, the letter emphatically announced itself as an attempt at debt collection: THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." (quotations and citation omitted)); *see also Collazo v. Resurgent Capital Servs., L.P.*, 443 F. Supp. 3d 398, 404-05 (W.D.N.Y. 2020) (dismissing claims based on an absence of the four *Hart* factors). However, the court considers *Cohen* to be the more directly relevant precedent.

*Paroff, Cooper & Cook*, for example, the debtor received two letters with the same date, from the same law firm, that demanded the same sum. 356 F. App'x 509, 511 (2d Cir. 2009). The Second Circuit rejected the argument that one of the letters violated Section 1692e(11) for failing to expressly state that the letter was from a debt collector, concluding that even the least sophisticated consumer would understand as much. *Id.*; *see also, e.g.*, *Majerowitz v. Stephen Einsten & Assocs.*, 2013 WL 4432240, at *3 (E.D.N.Y. Aug. 15, 2013) ("There was no requirement that defendant repeatedly add after its name what plaintiff surely knew, that it was a debt collector."). By the time of the February 13, 2018 letter, Plaintiff and her daughters had been actively embroiled in litigation with Defendants for nearly a year, and had recently filed a motion to dismiss the Civil Court action. Moreover, Plaintiff had already filed the instant federal lawsuit claiming that Defendants were debt collectors under the FDCPA. Even the least sophisticated consumer would understand that the February 13, 2018 letter from opposing counsel in her Civil Court action, which references the caption and discusses the procedural history of that action, was from a debt collector.[16]

_____

[16] The court recognizes that Section 1692e(11) also contains an exception for "formal pleading[s] made in connection with a legal action." 15 U.S.C. § 1692e(11). The Second Circuit has broadly interpreted Section 1692e(11)'s exception to apply to "any communication *forming any part* of a pleading." *Cohen*, 897 F.3d at 88 (citation omitted). Unlike some courts, however, courts in this circuit have declined to read Section 1692e(11)'s exception in a manner

Second, Plaintiff claims that the letter "threat[ened] to take an[] action that cannot legally be taken" by informing Plaintiff that Defendants would seek sanctions or attorney's fees if Plaintiff did not withdraw her third motion to stay or dismiss the Civil Court action. 15 U.S.C. § 1692e(5). (*See* Pl.'s Opp'n at 25-26.) But New York law expressly authorizes parties to seek sanctions and attorney's fees during the course of litigation. *See, e.g.*, N.Y. C.R.R. § 130-1.1(a) ("The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part.").

Although Plaintiff asserts that Defendants had no basis to threaten a motion for sanctions or costs, the court respectfully disagrees. Conduct is frivolous when "it is undertaken primarily to delay or prolong the resolution of the litigation . . . ." *Id.* § 130-1.1(c)(2). And here, Plaintiff filed three motions in the Civil Court action that sought essentially the same relief – namely, to stop the progress of the Civil Court action based on

_____

that would reach other litigation documents that do not fall within a common understanding of a "formal pleading." *See, e.g.*, *Somerset v. Stephen Eisenstein & Assocs., P.C.*, 351 F. Supp. 3d 201, 211-12 (E.D.N.Y. 2019). This issue largely arises in the context of initial communications, which are not relevant to Plaintiff's claim and require additional disclosures. *See* 15 U.S.C. § 1692e(11).

the existence of the instant federal action.  (ECF No. 175-35 at 4.)  New York courts have affirmed the award of sanctions based on similar conduct.  *See, e.g.*, *Ofman v. Campos*, 12 A.D.3d 581, 582 (2d Dep't 2005) (affirming award of sanctions for unnecessarily prolonging litigation when the party "made three consecutive motions seeking, in essence, the same relief").  Moreover, Plaintiff's efforts to halt the Civil Court action were meritless. As the Civil Court explained in its order denying Plaintiff's third motion, New York law authorizes the dismissal of an action based on a *previously filed* action involving the same subject matter. (ECF No. 175-35 at 4-5.)  The instant FDCPA action does not involve the same subject matter as the Civil Court action and was filed after the Civil Court action.[17]

### G. Plaintiff's Other Claims

Finally, Plaintiff raises a host of other claims that she has either abandoned, failed to support with any admissible evidence, or that are otherwise meritless.

***Challenges to the Validity of the Debt.***  In its July 9, 2019 memorandum and order, the court cautioned Plaintiff that she

---

[17] To the extent Plaintiff also challenges Mr. Bougopoulos's April 19, 2017 statement to Allison that the Board would seek to recover common charges, assessments, and attorney's fees if the case did not settle (Bougopoulos Decl. ¶ 36), the court rejects Plaintiff's Section 1692e(5) claim for substantially the same reasons.  As reflected by the Civil Court judgment, the Board was entitled to recover the common charges, assessments, and attorney's fees under its agreement with Plaintiff.

would not be able to prevail "on any claims that would undermine the state court's determination that the common charges were legitimate." (ECF No. 86 at 18-19.) Instead, Plaintiff would need to show that Defendants "violated the law by the manner in which they engaged in debt collection or on a basis other than one that disputes the legitimacy of the charges as found by the state court." (*Id.* at 19.) In her 56.1 statement, Plaintiff represents that she "will not argue or dispute the charges at this juncture (beyond the fraudulent late fees that the Civil Court completely denied)." (ECF No. 176-22 at 2.) The court accordingly deems Plaintiff to have abandoned any claim attacking the validity of the Civil Court judgment, including any claim that Defendants made a false, deceptive, or misleading representation in violation of Section 1692e, or attempted to collect unauthorized amounts in violation of Section 1692f(1).

With respect to the late fees that Plaintiff continues to dispute, it is true that, although Defendants prevailed in the Civil Court action, Defendants "did not prevail on the issue of late fees." (ECF No. 175-37 at 2.) However, the court "do[es] not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'" *Heintz*, 514 U.S. at 296; *see also, e.g.*, *Hackett v. Midland Funding LLC*, 2019 WL 1902750, at *2 (W.D.N.Y. Apr. 29, 2019) (holding that the filing of a collection

case "without the immediate means of proving ownership of the debt and then losing the case" did not violate the FDCPA); *Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343, 346 (8th Cir. 2018) ("[A] debt collector's loss of a collection action – standing alone – does not establish a violation of the Act."). Here, the only evidence offered by Plaintiff is that the jury ultimately declined to award late fees. That fact, standing alone, is insufficient to survive summary judgment.

      *Section 1692d.* Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "The statute's examples of qualifying acts all involve oppressive and outrageous conduct – that is, extrajudicial techniques of harassment designed to humiliate or annoy a debtor." *Finch v. Slochowsky & Slochowsky, LLP*, 2020 WL 5848616, at *3 (E.D.N.Y. Sept. 30, 2020) (quotations and citations omitted). "Under the principle of *noscitur a sociis* – that statutory words are often known by the company they keep – the statutory examples counsel against reading Section 1692d to reach to the dissimilar category of situations involving improper litigation conduct." *Id.* (quotations and citations omitted). Accordingly, in addition to rejecting any claim under Section 1692d for the reasons explained above, the court declines to extend

Section 1692d to reach the alleged litigation misconduct in the Civil Court action here.

**Section 1692f.** Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This provision "is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 166 (2d Cir. 2020) (citation omitted). Although Section 1692f and other provisions of the FDCPA are not "mutually exclusive," *Arias*, 875 F.3d at 135, here Plaintiff fails to "identify any misconduct beyond that which [she] assert[s] violate[s] other provisions of the FDCPA." *Scaturro v. Northland Grp., Inc.*, 2017 WL 415900, at *4 (E.D.N.Y. Jan. 9, 2017) (citation omitted). In any event, having reviewed the record, the court concludes that Plaintiff has failed to come forward with sufficient evidence for a reasonable jury to find that Defendants used any unfair or unconscionable means to collect her debts to the Board.[18]

---

[18] Similarly, the court finds that Plaintiff has failed to come forward with admissible evidence to create a genuine issue for trial to the extent she presses FDCPA claims based on conclusory allegations regarding: (1) the alleged appearance in Civil Court of Bryant Tovar, a defendant with whom Plaintiff has settled; (2) Defendants' alleged failure to adequately verify the debt prior to filing suit; or (3) Defendants' alleged misrepresentations to the Civil Court regarding Plaintiff's service of certain documents. (*See* Am. Compl. ¶ 23; Pl.'s Opp'n at 8 n.1, 28.)

## II.   New York General Business Law Claims

Plaintiff also asserts claims against Defendants under section 349 of New York's General Business Law.  (Am. Compl. ¶¶ 41-45.)  Having granted Defendants' motion as to all of Plaintiff's FDCPA claims, the court declines to exercise supplemental jurisdiction over her section 349 claims.  *See* 28 U.S.C. § 1367(c)(3).  "In the 'usual case' in which 'all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Krow v. Pinebridge Invs. Holdings U.S. LLC*, 2022 WL 836916, at *15 (S.D.N.Y. Mar. 21, 2022) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)).  The court accordingly dismisses Plaintiff's claims under section 349 of New York General Business law without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to the FDCPA claims. Plaintiff's claims under section 349 of New York General Business Law are DISMISSED without prejudice. The Clerk of Court is respectfully directed to enter judgment accordingly, serve a copy of this memorandum and order and the judgment on Plaintiff, and close this case.

SO ORDERED.

/s/ Kiyo A. Matsumoto
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:     March 29, 2022
           Brooklyn, New York